UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID SIMS, § | | |
|     *Plaintiff*, § | | |
| § | | |
| v. § | | Civil Action No. 4:14-CV-2145 |
| § | | |
| CITY OF MADISONVILLE, § | | |
| MADISONVILLE POLICE § | | |
| DEPARTMENT, AND JEFFERY § | | Jury Trial Demanded |
| COVINGTON, § | | |
|     *Defendants.* § | | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

David Sims, (hereafter "Plaintiff" or "Sims"), files this Original Petition (hereafter "this Petition") complaining of the City of Madisonville, the Madisonville Police Department, and Jeffery Covington, (hereafter collectively "Defendants"), and would show the Court as follows:

### I. THE PARTIES

1. Plaintiff is a natural person and resident citizen of Madison County, Texas.

2. Defendant, the City of Madisonville, Texas is a municipal corporation, incorporated under the laws of the State of Texas and located within Madison County, Texas, that may be served with process by serving the City Manager, City Manager Danny Singletary at Madisonville City Hall, 210 West Cottonwood, Madisonville, Texas 77864.

3. Defendant, Madisonville Police Department, is the law enforcement agency of the City of Madisonville, Texas, and may be served with process by serving City Manager, Danny Singletary at Madisonville City Hall, 210 West Cottonwood, Madisonville, Texas 77864.

4. Defendant Jeffery Covington, is a natural person sued in his personal capacity and may be served with process by serving him at his residence at 4639 Davidson Lane in Madisonville, Texas 77864, or wherever he may be found.

## II. JURISDICTION

5. This action is brought pursuant to 42 U.S.C. Sections 1983 and 1988 to redress the violation by Defendants of Plaintiff's rights as secured by the Fourteenth Amendment to the United States Constitution. This court has jurisdiction of Plaintiff's complaint pursuant to 28 U.S.C. Sections 1331.

## III. VENUE

6. Venue is appropriate and proper in this cause in the Southern District of Texas pursuant to 28 U.S.C. §1391(a) (1) as at least one (1) of the Defendants currently resides, or is located within, the Southern District at the time of filing this suit, as well as under 28 U.S.C §1391 (a) (2) because all or a substantial part of the events which gave rise to this cause of action occurred in the Southern District of Texas.

## IV. FACTS

7. David Sims was employed as a police officer with the Madisonville Police Department beginning on November 29, 2004, until his termination on July 27, 2012.

8. In July 2012, Sims was working as a corporal in the Department and received reports from confidential informants (CIs) that a supervising officer, Sergeant Jeff Covington, and another officer, were attempting to recruit individuals to plant narcotics on the vehicle of Covington's ex-wife in order to secure her arrest. Sergeant Covington and his ex-wife were involved in a contentious and ongoing custody dispute.

9.     Sims relayed the information to the Chief of Police, Charles ("Chuck") May, who immediately dismissed the information.

10.    Sometime before his termination, Sims accessed interdepartmental audio and video recording files of conversations between Covington and a CI or citizen regarding the conspiracy to illegally plant narcotics on Covington's ex-wife. Sims copied the files and provided them to the Texas Rangers to assist in their investigation into Covington.[1]

11.    On or about July 20, 2014, prior to a meeting that he had scheduled with Chief May and Sergeant Covington on July 26, 2012, Sims ran a search for files related to him, including files on an interoffice computer.

12.    Sims discovered that Covington was compiling an investigative file on him.

13.    Sims was able to access such files by logging into his own computer and using the administrative share program that allowed him, as an administrator, or anyone using a department computer, to access any computers in the Department.

14.    Sims found Sergeant Covington's investigative notes, included recordings from the GPS and audio/video recording system in Sims's vehicle, printed them out, and brought them into the meeting with Chief May and Sergeant Covington, during which time he offered rebuttal comments to the allegations in Covington's notes.

15.    All of the allegations related to Sims's handling of cases and alleged dereliction of duty, and none related to any alleged criminal conduct.

---

[1] Jeffery Covington was successful in having drugs planted on his ex-wife, secured her arrest and attempted to gain custody of their children. He ultimately failed.  In February of 2013, Jeffery Covington was indicted and arrested for delivery of a controlled substance, obstruction/ retaliation and official oppression. In April of 2013, Justin Barham was indicted and arrested on identical charges.  In April of 2014, Covington was tried and convicted by a jury.  Barham entered a plea shortly thereafter.

16. Sims asked Chief May if he was under investigation. Chief May insisted that he was not, advising Sims to stop being "paranoid."

17. Sims believed that Sergeant Covington had a vendetta against him because of an incident that had occurred when both were in Iraq and Sims was part of a military detachment that terminated Covington's work as a contractor for alleged misconduct. Sims believed that when he returned from Iraq, resumed his position with the Department, and Sergeant Covington became his superior officer, Covington began looking for ways to get rid of Sims because of Sims's knowledge or connection with that termination.

18. On July 26, 2012, Covington and Chief May placed Sims on probation for alleged dereliction of duties, for supposedly failing to appear in court for two warrants related to his active cases. Sims had missed one appearance, and the second alleged warrant was not signed.

19. Sims was placed on probation for a period of six (6) months.

20. By comparison, around the same time, Officer Justin Barham, Covington's good friend and co-conspirator in the matters related to Laura Covington, was caught stealing drugs seized during the execution of a search warrant. Barham was responsible for transporting all the evidence back to the department, but failed to do so. As a result, he was placed on probation for three months. During that three-month period of probation, Barham was recommended by Covington and the Chief for employment with the District Attorney's Office. The record of his probation and theft were omitted from the copy of his personnel file that was forwarded to the District Attorney's office.

21. At the July 26 meeting, Chief May and Sergeant Covington were surprised that Sims had access to the allegations because they had not provided him with prior notice of them.

4

22. Sims's employment was terminated based upon a clearly inapplicable workplace rule the following day, on July 27, 2012.

23. His notice of termination stated that, "On July 26, 2012 it was found that you accessed the computer of Sgt. Jeff Covington and copied a file to your computer.  This is a direct violation of General Order 800-05 (Police Department Computer Use Agreement) Section 7 and Section 12."   The notice was signed by Chief May, the City Manager Danny Singletary, and David Sims.

24. The investigation into the alleged violation of the computer use policy was not initiated until after the termination.

25. The "F-5 Report", a public document and communication to the State regulatory agency TECLOSE, indicated that Sims was "dishonorably discharged."

26. Chief May gave a speech to the media about his efforts to clean up the department in clear reference to his termination of Sims.  Consequently, Sims's termination and the charges against him were publicized at the instance of Chief May.

27. Chief May prompted criminal charges against Sims by referring the matter to the Texas Rangers for investigation.

28. Sims was consistently forthright in admitting how he had accessed the files and stated his belief that he had done nothing wrong.  The matter was referred to prosecutors for submission to the grand jury.

29. On August 30, 2012, the grand jury indicted Sims for "computer security breach," Texas Penal Code§ 33.02.

30. The charges against Sims were eventually dismissed by the district attorney "in the interest of justice," on September 11, 2013.

31. Sims appealed his "Dishonorably Discharged" classification to the State Office of Administrative Hearings.

32. The reason stated in Sims's notice of termination was his having accessed the computer of another officer and copied a file to his computer, which purportedly violated the Department's computer use agreement.

33. The file in questions was an internal investigative file on Sims that the other officer had compiled.

34. Sims accessed the file through his own computer, using his own administrative access. He then printed the file and took it to a meeting that he had with Chief May about the investigation against him.

35. The computer use policy prohibited the unauthorized access using someone else's administrative login without permission.

36. Chief May, nevertheless, falsely alleged that Sims "hacked" Covington's computer and retrieved unauthorized information.

37. Chief May falsely testified that Sims did not have any administrative privileges whatsoever, while admitting that Sims's services often saved the department a lot of money in Information Technology (IT) expenses. Sims was very knowledgeable with computers and often set up or administered the department's computer systems. Sims was often asked to repair computers, and even after his termination, was contacted to assist in accessing secure files pursuant to search warrants.

38. At the SOAH Hearing on April 17, 2014, Sims testified that he had accessed the files to show that Chief May was either mistaken or not being honest when he had previously told

Sims that there was no investigation against Sims.  He further testified that he believed he had done nothing wrong, as he accessed the files using his department issued login information.

39. Sergeant Johnny Cornelius corroborated Sims's testimony in this regard.  Sergeant Cornelius is currently employed with the Madisonville Consolidated Independent School District, but was previously employed by the Police Department.  Sergeant Cornelius testified that he also accessed documents from other officer's computers while employed with the Department, without reprimand or criticism.

40. For the first time, at the SOAH hearing, Chief May testified that Sims had been under internal investigation and that the Chief had authorized the investigation.  The Chief alleged that Sims hacked computer files concerning himself, and claimed this was different to accessing any other kind of file.

41. Moreover, while the notice of termination and subsequent referral for investigation did not mention Sims's reports to the Chief concerning Covington's conspiracy against his ex-wife, or the recorded conversations Sims provided to the Rangers, the investigation notes reveal that Covington was aware, and that the Police Department complained about Sims having copied the files to assist tin he investigation of Covington.

42. Based on this and other testimony Chief May, Sims realized that he was terminated in retaliation for his reports about Sergeant Covington's illegal activities.

43. The SOAH hearing examiner found in favor of Sims, noting that, "Given his long tenure with the Department and the lack of evidence on any prior work-related problems in the record, **it certainly appears there were other factors at play in the Department's decision to terminate** Mr. Sims.  The ALJ does not delve into those or whether the Department was justified in terminating Sims for a general lack of trust.  Rather, the ALJ focuses only on the elements for

classifying Mr. Sims's discharge and finds that the elements of a dishonorable discharge or a general discharge have not been met.  As such, his discharge is honorable." (emphasis added)

## V.  CAUSES OF ACTION

### A.  First Amendment Retaliation

44. Plaintiff exercised protected speech as a citizen when he reported police misconduct and the illegal conspiracy by Jeffery Covington to the Chief of Police.  Plaintiff exercised protected speech when he reported the same to the Rangers.  Defendants retaliated against Plaintiff for his protected activities, by placing him on probation, by conducting a secret and improper investigation into Plaintiff, and by terminating his employment.

45. Plaintiff seeks monetary damages and injunctive relief, alleging that his probation and then termination from the police department were unrelated to his performance.  These actions were based instead upon his opposition to the misconduct within the police force, and because Plaintiff reported a dirty cop.

46. The actions of Defendant set forth above violated plaintiff's right of free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

47. The City of Madisonville is liable because the Chief of Police has final authority over personnel disciplinary matters with respect to the police force.

48. As a result of the actions of Defendants, Plaintiff has been damaged by the loss of income, loss of professional stature, damage to reputation and career, and public humiliation of being removed under allegations of breached security and charged with a crime.

### B.  Dismissal without Due Process

49. Plaintiff alleges that the Defendant City violated his right to procedural due process when it dismissed him from his position without any type of a meaningful pretermination hearing.

The Plaintiff also contends that his post-termination hearing did not afford him due process because he had never been provided notice of the (ever-changing) reasons for his termination, or the secret investigation of him during his employment.  Moreover, the Defendants did not investigate the stated basis for his termination until after the fact.

50. Defendants denied Plaintiff his property interest in continued employment without cause, without investigation, and without the opportunity to clear his name.  Moreover, Plaintiff had a right to an appeal based on adequate notice of the bases for his termination.  Defendants deprived Plaintiff of that right.  Defendants did not provide notice, did not conduct any investigation into their stated bases until after Plaintiff's termination, did not disclose the real or complete reasons for the termination.

51. Plaintiff seeks injunctive relief in the nature of reinstatement, and damages.

C. **Violation of Liberty Interest**

52. Defendant deprived Plaintiff of his liberty interest by being stigmatized in connection with his dismissal.  Plaintiff was deprived his property interest in his good name by the Defendants.  The Chief publically accused Plaintiff of official misconduct as the basis for his dismissal.  The Plaintiff was not provided a name clearing hearing.

D. **Defendant Jeffery Covington Individually**

53. Defendant Jeffery Covington is liable for civilly conspiring, while acting under color of law, to deprive Plaintiff of constitutionally protected rights, and which have caused injuries and resulted in damages to the Plaintiff.

## VI.  PRAYER

54. Plaintiff respectfully prays for the following relief:

    a. Judgment against Defendant for damages sustained by Plaintiff as alleged herein, including actual damages, special damages, compensatory damages, lost wages, emotional damages, punitive damages, attorney's fees, costs, lost benefits, interest, and any other damages allowed by law;

    b. Attorney's fees, costs, and expenses;

    c. Injunctive relief, including, but not limited to, reinstatement to his former or an equivalent position, with reinstatement of fringe benefits and seniority rights.

55. Plaintiff prays that, upon trial before a jury of his peers, he be granted the relief set forth herein, as well as all other relief to which he may show himself justly entitled in equity or under law.

Respectfully Submitted,

*/s/ Laurence Watts*
Laurence Watts
*Attorney in Charge*
State Bar No. 20981000
Federal I.D. 7092
Melissa Azadeh
State Bar No. 24064851
WATTS & COMPANY LAWYERS, LTD.
P.O. Box 2214
Missouri City, Texas  77459
Tel: (281) 431-1500
Fax: (877) 797-4055

J. Paxton Adams
State Bar No. 24042459
Southern District No. 628065
J. PAXTON ADAMS
ATTORNEY AT LAW
1113 Twelfth Street
Huntsville, Texas 77340
Tel: (936) 291-9900
Fax: (936) 291-9903

**TRIAL BY JURY DEMANDED**