**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DAVID SIMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-2145 |
| | § | |
| CITY OF MADISONVILLE, | § | |
| MADISONVILLE POLICE | § | |
| DEPARTMENT, AND JEFFREY | § | |
| COVINGTON | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

David Sims, a City of Madisonville, Texas police officer, was fired after he reported misconduct by his supervising officer to the Chief of Police.  Sims sued the City and the officer, Sergeant Jeffrey Covington, under 42 U.S.C. § 1983, alleging that both violated his federal constitutional rights.  Sims filed a separate action in state court against the City, alleging wrongful termination under the Texas Whistleblower Act.  The state court granted the City's plea to the jurisdiction and dismissed the case with prejudice on the basis of governmental immunity.  In this court, both defendants have moved for summary judgment, arguing that the prior state-court dismissal precludes the federal-law claims Sims has asserted.

Based on the motions, the briefs and responses, the record, and the applicable law, the court concludes that Sims's claims against the City are barred by res judicata, but his claims against Covington are not.  The court grants the City's motion for summary judgment, (Docket Entry No. 28), and denies Covington's, (Docket Entry No. 30).  The City's motions to dismiss, (Docket Entry

Nos. 6 & 26), and Covington's motion for leave to file an amended answer asserting res judicata as an affirmative defense, (Docket Entry No. 40), are moot.

The reasons for these rulings are explained below.

## I.    Background

### A.    Factual Background

David Sims worked as a police officer with the Madisonville Police Department from 2004 until he was fired in July 2012.  Sims alleges that in 2011, he received reports that Sergeant Jeffrey Covington had conspired with local informants to plant narcotics in a magnetic key holder under his ex-wife's vehicle to get her arrested and help him prevail in their bitter custody fight.  Sims reported what he had learned to Chief Charles May in October 2011.  Chief May dismissed Sims's suspicions and took no action.  (Docket Entry No. 25, ¶¶ 35-39).

On November 9, 2011, a state trooper stopped Covington's ex-wife for a traffic offense. Sergeant Covington heard the trooper relay her name and license information over the radio.  He called that state trooper to tell him that his ex-wife had drugs in a key holder under her vehicle.  The trooper obtained the ex-wife's consent to search the vehicle.  A small amount of methamphetamine was found precisely where Covington told him it would be.  The trooper arrested Covington's ex-wife.  She was charged with possession of a controlled substance, in violation of Texas state law. (Docket Entry No. 25, ¶¶ 8-13).   Sims later learned that the Texas Rangers had uncovered information that Covington and others had arranged to buy the methamphetamine and plant it in his ex-wife's car.  (*Id.*, ¶ 49).

In June 2012, Sims used an administrative-share program to access police department computer files containing audio and video recordings of Covington discussing his plot to frame his

wife.  Sims downloaded the audio and video files and gave them to the Texas Ranger leading that agency's investigation.  (Docket Entry No. 25, ¶¶ 49-50).  On July 20, 2012, Sims again used the administrative-share program to search for files containing his own name.  He learned from those files that Covington had been investigating him.  On July 26, Sims brought these files to Chief May and asked whether he was under investigation.  (*Id.*, ¶¶ 52-59).  In response to Sims's inquiry, Chief May placed him on six-month probation for dereliction of duty.  (*Id.*, ¶ 60).  The next day, Chief May fired Sims for violating the department's Computer Use Agreement by accessing Covington's computer and copying files from it to Sims's own computer.  (*Id.*, ¶ 64).

Sims was dishonorably discharged from the police force.  On August 30, 2012, a Texas grand jury indicted him for "computer security breach," in violation of § 33.02 of the Texas Penal Code.  (Docket Entry No. 25, ¶ 92).  Less than a month later, the district attorney dismissed the charges against Sims in the "interests of justice."  Sims successfully challenged his dishonorable discharge on administrative appeal and his discharge was reclassified as honorable.  (*Id.*, ¶¶ 93-107).

### B.  The State-Court Suit

On July 14, 2014, Sims filed a *pro se* lawsuit in Texas state court against the City of Madisonville, asserting a wrongful termination claim under the Texas Whistleblower Act, TEX. GOV'T CODE § 554.001.  (Docket Entry No. 29-1, Ex. A).  The City filed a plea to the jurisdiction, arguing that the state court lacked jurisdiction because Sims had not met the procedural requirements for overcoming governmental immunity under § 311.034 of the Texas Government Code.  (Docket Entry No. 29-2, Ex. B).  "A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of the action.  The burden is on the plaintiff to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction."  *CPM*

3

*Trust v. City of Plano*, 05-14-00104-CV, 2015 WL 1568746, at *5 (Tex. App.—Dallas Apr. 7, 2015, no. pet. h.) (citations omitted).  The state court granted the plea and dismissed the claims against the City with prejudice.  (Docket Entry No. 29-4, Ex. D).  Sims appealed the dismissal order.  (Docket Entry No. 35, at 1).  That appeal is pending.

>        **C.        The Federal-Court Suit**

On July 25, 2014, eleven days after suing the City in state court, Sims sued both the City and Covington in this court under 42 U.S.C. § 1983, alleging that they violated his First and Fourteenth Amendment rights.  (Docket Entry No. 1, ¶¶ 44-53).  The City and Covington each moved for summary judgment based on the preclusive effect of the state court's dismissal.  (Docket Entry No. 28, at 1); (Docket Entry No. 30, at 1).[1]  The motions are analyzed under the applicable legal standards.

**II.        The Legal Standards**

>        **A.        Summary Judgment**

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing that is, pointing

---

[1]  The City also filed a motion to dismiss and supplemented the motion after Sims amended his complaint. (Docket Entry Nos. 6 & 26).  Covington moved for leave to file an amended answer to plead res judicata as an affirmative defense.  (Docket Entry No. 40).

out to the district court that there is an absence of evidence to support the nonmoving party's case."
*See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).  When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on its pleading allegations.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112,119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B.    Claim Preclusion

The Full Faith and Credit Clause of the United States Constitution and its implementing statute, 28 U.S.C. § 1738, govern the preclusive effect of a state-court judgment in a subsequent federal action.  Final judgments of state courts "have the same full faith and credit in every court

within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." *Id*. Under Full Faith and Credit, "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force." *Baker v. General Motors Corp.*, 522 U.S. 222, 233 (1998) (footnote and citations omitted). This court applies Texas preclusion law to determine the effect of the state court's dismissal order. 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Norris v. Hearst Trust*, 500 F.3d 454, 460–61 (5th Cir. 2007).

The Texas rule on res judicata, or claim preclusion, requires: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Norris*, 500 F.3d at 461 (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). If these elements are satisfied, "[r]es judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action." *Amstadt*, 919 S.W.2d at 652.

The City and Covington argue that the state court's dismissal satisfies all three elements, barring Sims's lawsuit in this court. (Docket Entry Nos. 29, 30).

## III.    Analysis

### A.    The City's Motion for Summary Judgment

#### 1.    Whether the State Court's Dismissal Order is a Final Judgment on the Merits by a Court of Competent Jurisdiction

The Fifth Circuit has held that, under Texas law, dismissals with prejudice on the basis of governmental immunity are final judgments on the merits for claim-preclusion purposes. *Carrasco v. City of Bryan, Tex.*, 515 F. App'x 325, 326 (5th Cir. 2013) (per curiam) ("The state court's dismissal with prejudice is a final judgment on the merits."), *cert. denied*, 134 S. Ct. 267 (2013); *see also Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991) ("[I]t is well established that a dismissal with prejudice functions as a final determination on the merits.").

In *Carrasco*, a plaintiff filed a federal § 1983 lawsuit after a Texas state court had granted the defendant's plea to the jurisdiction and dismissed the plaintiff's related state-law claims with prejudice based on governmental immunity. *See Carrasco v. City of Bryan, Tex.*, No. H-11-662, 2012 WL 950079, at *3 (S.D. Tex. 2012), *aff'd*, 515 F. App'x 325 (5th Cir. 2013); *see also id.*, Docket Entry No. 7-2 ("Order Granting Defendant's Plea to the Jurisdiction"). The federal court held that claim preclusion barred the federal action. The court held that under Texas law, the "dismissal with prejudice constitutes a 'final determination on the merits' for the purposes of res judicata." *Id.* (quoting *Harris County v. Sykes*, 136 S.W.3d 635, 640 (Tex. 2004)). The plaintiff appealed, arguing that the Texas court "erred in determining that the City was entitled to sovereign immunity, in failing to grant him leave to amend, or in entering a dismissal with (rather than without) prejudice." *Carrasco*, 515 F. App'x at 326. The plaintiff also argued "that res judicata should not apply because he [was] seeking monetary damages for constitutional violations under § 1983 that . . . the Texas court had no power to award." *Id.* The Fifth Circuit affirmed the district court's dismissal, holding that the dismissal with prejudice based on governmental immunity was a final determination on the merits. *Id.* (citing *Corpus Christi Taxpayer's Ass'n v. City of Corpus Christi*, 858 F.2d 973, 976 (5th Cir. 1998); *Harris County*, 136 S.W.3d at 639-40).

7

The *Carrasco* panel relied on *Harris County v. Sykes*, 136 S.W.3d 635 (Tex. 2004).  In that case, the Texas Supreme Court held that when a trial court grants a plea to the jurisdiction based on governmental immunity, it should dismiss the plaintiff's claims with prejudice, provided that the "plaintiff has been provided a reasonable opportunity to amend." *Harris County*, 136 S.W.3d at 639. These dismissals with prejudice are "final determination[s] on the merits" that have preclusive effect.  *Id.* at 640.[2]

The Texas court's order dismissing Sims's wrongful-termination suit against the City was "with prejudice"[3] and is therefore a prior final judgment on the merits.  (Docket Entry No. 29, Ex. D); *see Hillman v. City of McKinney*, No. 4:11-cv-150, — F. Supp. 3d —, 2014 WL 4954631, at *5 (E.D. Tex. Oct. 2, 2014) (finding that the defendant had established the first element of claim preclusion because "[i]n the prior state court litigation, Plaintiffs' claims for conversion and unjust enrichment were dismissed with prejudice following a motion by the parties"); *Berkman v. City of Keene*, No. 3:10-CV-2378-B, 2011 WL 3268214, at *3 (N.D. Tex. Jul. 29, 2011) (finding that the state court's "dismissal based on governmental immunity is a dismissal with prejudice, and acts as

---

[2]   While *Harris County* addressed the preclusive effect of dismissals under Texas Tort Claim Act, other Texas courts apply the rule generally to prior dismissals with prejudice.  *See Wolter v. Delgatto*, No. 14-05-00055-CV, 2006 WL 664214, at *3 (Tex. App.—Houston [14th Dist.] Mar. 16, 2006, no pet.) (holding that dismissal with prejudice for lack of standing was on the merits and "the dismissed claims were finally determined"); *see also Smith v. City of Blanco*, No. 03-11-00091-CV, 2013 WL 491022, *3, (Tex. App.—Austin Feb. 1, 2013, no pet.) (applying *Harris County* to hold that dismissal of a breach of contract claim with prejudice was a final determination on the merits).

[3] The state court's order used the phrase "dismissed with prejudice."  (Docket Entry No. 29, Ex. D).  Under certain circumstances, the words "with prejudice" lack legal effect if the merits of the claim are not considered.  *Novak v. M.D. Anderson Cancer Center*, 50 S.W.3d 512, 516 (Tex. App.—Austin 2000), *rev'd in part on other grounds*, 52 S.W.3d 704 (Tex. 2001).  The Texas Supreme Court has held that dismissals for governmental immunity are on the merits and therefore with prejudice.  *Harris County*, 136 S.W.3d at 637; *see also Harris County*, 136 S.W.3d at 641 (Brister, J., concurring) (characterizing the holding to mean that "dismissal by a plea to the jurisdiction on immunity grounds must be with prejudice").

a final judgment").

Sims argues that the Texas court erred in dismissing his claim with prejudice without leave to amend.  He has appealed that ruling to the Texas appellate court.  This court is not a state appellate court and cannot use this argument as a basis to deny preclusion.  *See Corpus Christi Taxpayer's Ass'n*, 858 F.2d at 976 (refusing to consider the plaintiffs' arguments that the "state trial court erred by rendering summary judgment when facts were disputed, and by rendering a take-nothing judgment as to the plaintiffs' entire suit when the City's motion for summary judgment had been founded only on the no tax increase theory" because the federal court lacked jurisdiction to do so); *see also Carrasco*, 515 F. App'x at 326 (refusing to consider the plaintiff's argument that the state court erred by granting the city's plea to the jurisdiction on the basis of governmental immunity without granting leave to amend, citing *Corpus Christi Taxpayer's Ass'n*, 858 F.2d at 976).

The Fifth Circuit has held that under Texas law, "summary judgment on the basis of sovereign immunity is a judgment on the merits for purposes of the application of res judicata." *Jabary v. City of Allen*, No. 4:10-CV-711, 2015 WL 294270, at *5 (E.D. Tex. Jan. 22, 2015) (citing *Flores v. Edinburg Consolidated I.S.D.*, 741 F.2d 773, 774 (5th Cir. 1984)); *see also Berkman*, 2011 WL 3268214, at *3.  While the published Fifth Circuit cases have addressed only the preclusive effect of state court grants of summary judgment on the basis of governmental immunity, orders granting pleas to the jurisdiction have the same preclusive effect as orders granting summary judgment when they are based on governmental immunity.  *See Harris County*, 136 S.W.3d at 641 (Brister, J., concurring) (characterizing the majority opinion as holding that there is no difference in preclusive effect between orders granting summary judgment and orders granting pleas to the

jurisdiction on the basis of governmental immunity).

Sims attacks the preclusive effect of the state court's judgment on two grounds.  First, Sims argues that the state court's judgment cannot preclude his federal lawsuit because the state court dismissed his claim for lack of subject-matter jurisdiction.  (Docket Entry No. 39,  at 3).  When a state court dismisses a claim based on governmental immunity asserted in a plea to the jurisdiction, it does so on the basis of lack of subject-matter jurisdiction.  *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex. 1999).  Generally, a dismissal for lack of jurisdiction does not have preclusive effect.  *Swearingin v. Estate of Swearingin*, No. 2-05-132-CV, 2006 WL 1653294, at *6 (Tex. App.—Fort Worth June 15, 2006, no pet.); *Smith v. Burns*, 107 S.W.2d 397, 399 (Tex. Civ. App.—Eastland 1937, no writ); *Small v. Small*, 434 S.W.2d 940, 942 (Tex. Civ. App.—Waco 1968), *writ refused n.r.e.* (Mar. 19, 1969).  But Sims's argument fails to account for the difference between dismissals with and without prejudice and for the clear state law on the effect of granting a dismissal based on a plea to the jurisdiction asserting immunity.

When a Texas trial court dismisses a suit with prejudice, the dismissal is a final determination on the merits that precludes subsequent suits raising claims involving the same transaction or occurrence that could have been raised in the first action.  *Garrett v. Williams*, 250 S.W.3d 154, 160 (Tex. App.—Fort Worth 2008, no pet.) (citing *Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex. 1999); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630-31 (Tex. 1992)).  Even when the ground for dismissal is a lack of subject-matter jurisdiction, if that dismissal is based on governmental immunity and is with prejudice, it has preclusive effect.  *Harris County*, 136 S.W.3d at 640; *see also Berkman*, 2011 WL 3268214, at *1, *3-4 (granting the City's motion for summary judgment based on res judicata even though the state court "dismissed Berkman's claims due to lack

10

of jurisdiction" because a "dismissal based on governmental immunity is a dismissal with prejudice, and acts as a final judgment" (citing *Harris County*, 136 S.W.3d at 639)).

Sims also argues that the state court was not a court of competent jurisdiction because it lacked subject-matter jurisdiction over his whistleblower claim.  (Docket Entry No. 31, at 6-7).  The state court was a court of competent jurisdiction to determine whether governmental immunity applied, and, in general, "courts always have jurisdiction to determine their own jurisdiction." *Jabary*, 2015 WL 294270 at *5 (quoting *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007)).

Next, Sims argues that the state court's dismissal was not final because an appeal is pending. (Docket Entry No. 39, at 1).  Sims's pending appeal does not negate the finality of the state court's judgment.  *JGM Holdings, L.L.C. v. T-Mobile USA, Inc.*, 568 F. App'x 316, 320 (5th Cir. 2014) (citing *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) ("[A] judgment is final for the purposes of issue and claim preclusion despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo.")); *see also* 18A CHARLES WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 4433 (2d ed.) § 4433 ("The Supreme Court long ago seemed to establish the rule that a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually non-existent situation in which the 'appeal' actually involves a full trial de novo.").[4]

---

[4] Trial de novo is "a trial anew in which the plaintiff below retains the burden of proving every essential element of a cause of action."  *Redmond v. United States*, 507 F.2d 1007, 1011 (5th Cir. 1975); *see also Am. Fruit Growers v. S. T. Runzo & Co.*, 95 F. Supp. 842, 844 (W.D. Pa. 1951) ("Trial de novo is generally held to mean a trial anew of the entire proceeding, including the hearing of evidence as though no previous action had been taken.").

The first element of claim preclusion is satisfied.

### 2.     Whether the Same Parties Were Involved in Both Lawsuits

This element is clearly satisfied.   Sims sued the City in both lawsuits.  (Docket Entry 29-1, Ex. A); *see Amstadt*, 919 S.W.2d at 652.

### 3.     Whether the § 1983 Claims Could Have Been Raised in the Prior Lawsuit

"In determining whether two actions are sufficiently related for purposes of res judicata . . . Texas follows a transactional approach."  *Weaver v. Texas Capital Bank N.A.*, 660 F.3d 900, 907 (5th Cir. 2011) (citing *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203 (Tex. 1999), *on reh'g in part* (Aug. 26, 1999)).  A court considers several factors in deciding whether two lawsuits arise out of the same transaction or occurrence, including "their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes."  *Weaver*, 660 F.3d at 907 (quoting *Getty Oil Co. v. Ins. Co. of N.A.*, 845 S.W.2d 794, 799 (Tex. 1992)).

Sims's earlier claim of wrongful termination under the Texas Whistleblower Act and the § 1983 claims he asserts in this case arise from the same occurrence.  Sims argues that the state court order "related to a different cause of action" and therefore could not have preclusive effect.  (Docket Entry 39, at 3).  Different theories of recovery based on the same operative facts do not generate different causes of action.  *Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1253-54 (5th Cir. 1991).  Sims's theories of recovery in the two lawsuits differ, but both arise from the same set of operative facts—Sims's termination after he reported Covington's misconduct.  Sims's § 1983 claims clearly could have been raised in the prior state-court lawsuit.  *Home Builders Ass'n of Mississippi, Inc. v.*

*City of Madison, Miss*., 143 F.3d 1006, 1013 (5th Cir. 1998) ("Federal jurisdiction over § 1983 actions is concurrent, not exclusive."); *see also Carrasco*, 515 F. App'x at 326 (holding that Texas courts have the power to award "monetary damages for constitutional violations under § 1983," and affirming the district court's dismissal based on res judicata). The third element is satisfied because the different lawsuits arise from the same occurrence, and all the claims could have been raised in the prior lawsuit.

All three elements are satisfied. Res judicata, or claim preclusion, bars Sims's § 1983 claims against the City.

### B.    Covington's Motion for Summary Judgment

Covington also argues that Sims's claim against him is precluded. (Docket Entry No. 30, at 2). Covington was not a party in the prior state lawsuit. The Fifth Circuit has held that under Texas law, a party in privity with a party to a prior suit may assert res judicata. *E.E.O.C. v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007) (citing *Amstadt*, 919 S.W.2d at 653).

"[T]here is no categorical rule for privity; instead the courts look to 'the circumstances of each case.'" *Id*. (quoting *Getty Oil Co.*, 845 S.W.2d at 800). "Privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation." *Amstadt*, 919 S.W.2d at 653 (citation omitted). "Those in privity with a party may include persons who exert control over the action, persons whose interests are represented by the party, or successors in interest to the party." *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 96 (Tex. App.—Eastland 2010, pet. denied) (citing *Getty Oil Co.*, 845 S.W.2d at 800–01).

An employer's relationship to an employee does not itself establish privity. *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977). Nor do allegations of concerted action between the

separate defendants.  *RenewData Corp. v. eMag Solutions, LLC*, 03-05-00509-CV, 2009 WL 1255583, at *5 (Tex. App.—Austin May 6, 2009, pet. denied) (citing *Soto v. Phillips*, 836 S.W.2d 266, 270 (Tex. App.—San Antonio 1992, writ denied)); *New York Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962, 969 n.6 (S.D. Tex. 2014) (predicting that "the Texas Supreme Court would not adopt a rule that alleged coconspirators are always in privity for the purposes of claim preclusion, but would instead hold that courts must consider whether the circumstances justify such a ruling").  A former employee's lawsuit against the employer precludes a subsequent lawsuit against another employee only if the employer's liability in the prior lawsuit derived vicariously and exclusively from that other employee.  *Hammonds*, 559 S.W.2d at 347 ("If a plaintiff suffers a take nothing judgment or dismissal with prejudice in a suit against an employer only because the harm was due to a deed of an employee done outside the scope of his employment, the judgment should not bar suit against the employee."); *see also Soto*, 836 S.W.2d at 270 (holding that a subsequent lawsuit against employees was barred by a prior lawsuit against the employer based on respondeat superior).

Although Covington was a City employee, the City's potential liability to Sims under the Texas Whistleblower Act was not based only on vicarious liability for Covington's conduct.  When Covington allegedly retaliated against Sims, Covington was acting for personal reasons, outside the scope of his employment.  *See Hammonds*, 559 S.W.2d at 347 (holding that vicarious liability may not be established if the employee is acting outside the scope of his employment).  To be within the scope of employment, the "employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized."  *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007).  "Accordingly, 'if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation.'"

14

*Id.* (quoting *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)).  When Covington allegedly planted narcotics in his ex-wife's vehicle and reported the narcotics to another policy agency, he did so to gain an advantage in a personal custody dispute.  When Covington compiled information against Sims, allegedly in retaliation for his reporting Covington's actions against his wife, Covington acted for his own purposes and in a manner that the City did not authorize.  Covington's conduct was not incidental to his authorized conduct.  Pursuing these personal vendettas advanced no City purpose, but was wholly personal.  *See Tipps v. McCraw*, 945 F. Supp. 2d 761,766 (W.D. Tex. 2013) ("An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." (quoting RESTATEMENT (THIRD) OF AGENCY § 7.07)); *cf. City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994) (finding that on-duty police officers pursuing a suspect in squad car did not act outside the scope of their authority in driving without regard for the safety of others because "[a]n official acts within the scope of her authority if she is discharging the duties generally assigned to her").[5]  And while Covington's conduct started the chain of events that led to the City's decision to terminate Sims, it was the City's independent act of terminating Sims for reporting Covington's alleged misconduct that generated Sims's wrongful-termination claims.

Covington cites several cases finding privity between a city and its police officers and argues

---

[5]  Nor could the City's liability for Sims's subsequent § 1983 claims derive vicariously from Covington's conduct.  Vicarious liability is not available under § 1983.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  A local government may not be sued under § 1983 due to the injury inflicted solely by its employees.  *Id.*  The government is only liable when its policies or customs inflict injury.  *Id.*

that the City's "alleged liability in the state court whistleblower case was derived in part from Covington's alleged involvement in the termination decision." (Docket Entry No. 30, at 3 & n.1, 4).[6] But most of the cases Covington cites considered the preclusive effect of a prior federal-court dismissal, not state-court dismissal.[7] *Cf. Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."); *BCR Safeguard Holding, LLC v. Morgan Stanley Real Estate Advisor, Inc.*, — F. App'x —, 2015 WL 3466110, at *8 (5th Cir. June 2, 2015) ("In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment." (quotation omitted)). None of the cases Covington cites applied Texas preclusion law, which imposes a more demanding privity standard. *Compare RenewData Corp.*, 2009 WL 1255583, at *4 ("The mere fact that individuals are interested in the same question or in proving the same set of facts is not sufficient to prove privity through adequate representation." (citing *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971); *Maxson v. Travis Cnty. Rent Acct.*, 21 S.W.3d 311, 316-17 (Tex. App.–Austin 1999, pet. dismissed)), *with Anderson v. City of Dallas*, No. 3:02-cv-1303-N, 2004 WL 912564 (N.D. Tex. Apr. 28, 2004) (finding that a prior federal-court dismissal of a case against the city precluded a plaintiff's subsequent action against individuals who also worked for the police department because both "were employees whose conduct formed part

---

[6] *See Chalmers v. City of Dallas*, No. 3:14-cv-36-N, 2014 WL 7174289, at *1, *6-7 (N.D. Tex. Nov. 20, 2014); *Tansey v. McGrail*, No. 4:12-cv-550-A, 2013 WL 857374, at *7 (N.D. Tex. Mar. 7, 2013); *Chavers v. Hall*, No. H-10-3922, 2011 WL 2457943, at *3-4 (S.D. Tex. June 16, 2011); *Anderson v. City of Dallas*, No. 3:02-cv-1303-N, 2004 WL 912564, at *2-3 (N.D. Tex. Apr. 28, 2004).

[7] *Chalmers* involved two prior dismissals, a 2003 federal-court judgment and a 2013 state-court judgment. The court concluded that the defendants in both cases were "in privity with [the] [d]efendants in this case," but it did not apply Texas law to determine the preclusive effect of the state-court judgment. *Chalmers*, 2014 WL 7174289, at *7.

16

of the basis under which [the plaintiff] sought to hold the City of Dallas liable" in the first action (citing *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1289 (5th Cir. 1989)).

Covington also argues that he is in privity with the City because he "is alleged to be a conspirator with the Chief of Police in firing Sims." (Docket Entry No. 30, at 4). In *New York Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962 (S.D. Tex. 2014), the district court rejected a similar argument. After surveying Texas state law on the issue, the court made an *Erie* guess that "the Texas Supreme Court would not adopt a rule that alleged coconspirators are always in privity for the purposes of claim preclusion." *Id.* at 969 n.6 (citing *Rogers v. Walker*, 2013 WL 2298449, at *4 (Tex. App.–Corpus Christi, May 23, 2013, pet. denied); *RenewData*, 2009 WL 1255583, at *4-5).[8] Instead, the district court predicted that the Texas Supreme Court "would . . . hold that courts must consider whether the circumstances justify such a ruling." *Id.* The circumstances the record in this case reveals do not support finding that Covington was in privity with the City for preclusion purposes. Sims's state-court petition did not allege a conspiracy between the City and Covington. The City would not have represented Covington's interest in defending against Sims's whistleblower claim; to the contrary, the City sought and would likely again seek dismissal on the basis of its own governmental immunity. (Docket Entry No. 31-1, at 60-61); *see Rogers*, 2013 WL 2298449, at *4 (finding that the "conspiracy allegations in appellant's first amended petition d[id] not conclusively establish privity" in part because "in the probate action, appellant did not make any conspiracy

---

[8] *See also Novell, Inc. v. Microsoft Corp.*, 429 F. App'x 254, 261 (4th Cir. 2011) ("Nonmutual claim preclusion is generally disfavored."); *Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc.*, 776 F.2d 1270, 1275 n.4 (5th Cir. 1985) (observing that the arguments supporting nonmutual claim preclusion "are substantially weaker than the arguments for nonmutual issue preclusion"); 18A WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 4464.1 (2d ed. 2002) (cautioning against "[b]ogus findings of privity" that "may could reasoning as later courts confront real privity questions").

allegations" and there was "no evidence that [the probate defendant] had an interest in the probate action in disproving the existence of a conspiracy"); *cf. Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3d Cir. 1972) (finding privity because "the essential allegations of the second complaint parallel[ed] those of the first" and "the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy but had not been named as parties defendant at that time").

Even if the City's liability derived in part from Covington's alleged misconduct, the *Restatement (Second) of Judgments* "provides two exceptions to th[e] rule" that "alleged coconspirators may assert claim preclusion against plaintiffs in a second action." *See New York Pizzeria*, 53 F. Supp. 3d at 971 n.7. Under the *Restatement*, "[i]f two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, . . . [a] judgment against the injured person that bars him from reasserting his claim against" one defendant "extinguishes any claim he has against the other person responsible for the conduct" unless "[t]he judgment in the first action was based on a defense that was personal to the defendant in the first action." RESTATEMENT (SECOND) OF JUDGMENTS § 51(1)(b). Because the state court dismissed Sims's whistleblower action against the City based on governmental immunity, "a defense that was personal to the defendant in the first action," this exception applies here. *See id.*

Because Covington has failed to establish privity, the second element of res judicata, Covington is not entitled to a summary judgment on the basis of preclusion.

**IV.** **Conclusion**

The City's motion for summary judgment is granted, (Docket Entry No. 28).  Sims's claims against the City are dismissed with prejudice.  The City's motions to dismiss, (Docket Entry Nos. 6 & 26), are denied as moot.  Covington's motion for summary judgment, (Docket Entry No. 30), is denied, and his motion for leave to file an amended answer, (Docket Entry No. 40), is denied as moot.

SIGNED on July 1, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

19