United States District Court
Southern District of Texas

**ENTERED**

June 06, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DAVID SIMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-2145 |
| | § | |
| JEFFERY COVINGTON, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This case involves a bitter divorce and custody dispute between a police officer and his estranged ex-wife, his effort to plant drugs in her car to have her arrested, and a long-running feud between this officer and another officer, the plaintiff in this case. The legal issues, unlike the facts, are straightforward.

David Sims, a former Madisonville, Texas police officer, sued his supervisor, Jeffery Covington, under 42 U.S.C. § 1983, alleging First Amendment retaliation and violations of his Fourteenth Amendment procedural due-process rights. Covington moved for summary judgment on qualified immunity. (Docket Entry No. 52). Sims responded, and Covington replied. (Docket Entry No. 86, Ex. 1; Docket Entry No. 93). The parties have wrangled about the length of the record submitted and of the accompanying briefs. In the end, the court largely allowed the parties to submit what they sought. (*See* Docket Entry No. 110).

The extensive record evidence, in light of the binding Fifth Circuit authority, clearly precludes Sims's claims. Based on the record, the parties' briefs and arguments, and the applicable law, the court grants Covington's summary judgment motion and dismisses this case. A final

1

judgment is separately entered.

The reasons are explained below.

## I.   Background

The facts and the reasonable inferences they support are taken in the light most favorable to Sims. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam).

Sims worked as a police officer with the Madisonville Police Department from 2004 until he was fired in July 2012. (Docket Entry No. 87, Ex. 36 at p. 8). The Army interrupted his police work by calling him to active duty in 2008. (*Id.* at p. 19). From 2008 to 2009, Sims was stationed in Mosul, Iraq, where he met Covington, a private security contractor. (Docket Entry No. 87, Ex. 1 at p. 3). While still on active duty, Sims learned that the Army had investigated Covington for smuggling drugs into a military base in Iraq and had ordered him to leave the country. (*Id.* at p. 4).

Back in Madisonville, Sims and Covington again crossed paths. Sims was reinstated to the Police Department in October 2011 only to find that Covington—now Sergeant Covington—was his immediate supervisor. (*Id.* at p. 27). Sims harbored suspicions about Covington from their time in Iraq. (*Id.* at p. 28). Those suspicions were confirmed when two confidential informants told Sims that Covington, who had recently divorced, was attempting to recruit local criminals to plant drugs in his ex-wife's car and get her arrested to help him gain custody of their two children. (*Id.* at p. 27–28). In October 2011, Sims reported this rumor to Covington's supervisor, Police Chief Claude "Chuck" May. (*Id.* at p. 28). Chief May refused "to believe the word of crack heads over [his] officers" and took no action. (*Id.* at p. 29).

But the rumor apparently turned out to be true. Sergeant Covington had previously told State Trooper Carl Clary that his ex-wife, Laura Covington, was "running dope" and that she kept

methamphetamine in a magnetic key holder under her car-door frame.  (Docket Entry No. 87, Ex. 15 at p. 7).  On November 9, 2011, Clary relayed Laura Covington's name and license information over the police-department radio in connection with a possible traffic violation.  (*Id.* at p. 6).  When Sergeant Covington heard this, he called Clary and asked him to stop Laura Covington and search her car.  (*Id.* at p. 9).  When Clary stopped the car, Laura Covington consented to a search.  (*Id.*).  Clary found two small bags of methamphetamine precisely where Sergeant Covington had told him to look and arrested Laura Covington.  (*Id.* at p. 12, 14).  She was charged with possessing a controlled substance, in violation of Texas law.  Several hours after arresting her, Clary told Texas Ranger Andres de la Garza that the drugs might have been planted.  Ranger de la Garza began investigating whether Laura Covington had been framed.

In June 2012, Sims was using Covington's work computer to search for a video file.  (Docket Entry No. 87, Ex. 1 at p. 7).  Sims discovered audio and video recordings of Covington discussing a plot to frame his ex-wife.  (*Id.*).  Sims downloaded the incriminating files onto a CD and gave them to Ranger de la Garza.  (*Id.* at p. 10).  Sims stated that he was acting "as a citizen" who was "concerned" about police-department corruption.  (*Id.*).

The next month, Sims did not make a required court appearance because he overslept.  On July 26, 2012, Chief May and Sergeant Covington met with Sims to place him on a six-month probation period for failing to attend court.  (Docket Entry No. 87, Ex. 49 at p. 2).  At the meeting, Sims brought typed notes, leading Chief May and Sergeant Covington to suspect that Sims knew what they were going to say ahead of time.  (*Id.*).  They speculated that Sims might have accessed notes Sergeant Covington had prepared for the disciplinary meeting and saved on his computer.  Chief May reported his suspicion to the Madisonville City Manager, Danny Singletary.  (*Id.* at p.

3).  Singletary authorized the City's computer-service provider to scan Sims's work computer.  They discovered that Sims's computer contained one of Covington's files.  (*Id.*).  Sergeant Covington wrote a memorandum to Chief May recommending that he fire Sims for "breaking in" to his computer.  (Docket Entry No. 87, Ex. 49).  Sergeant Covington told Chief May and others that Sims did not have access to the file, that the file was password-protected, and that Sims must have used Sergeant Covington's computer without his permission.  (*Id.*; Docket Entry No. 87, Ex. 21).

The computer file revealed that Covington was himself investigating Sims.  The file included GPS data showing that Covington was tracking Sims's movements.  Contrary to what Sergeant Covington told Chief May, Sims had easy access to Covington's file.  It was not password-protected.  Instead, it was accessible on the Police Department's shared network drive.  Sergeant Johnny Cornelius, who worked with Sims and Sergeant Covington, stated that Sims and others could readily access files saved on other employees' computers through the department's administrative-share computer program.  (Docket Entry No. 87, Ex. 52).  Cornelius stated that he showed Chief May how the program worked by accessing documents on his secretary's computer from his own computer.  (*Id.*).  Testimony from Richard White, an IT specialist hired by the City, was consistent.  (Docket Entry No. 87, Ex. 6 at p. 6).

The day after Sims met with Chief May and Sergeant Covington—July 27, 2012—Sims was fired for violating the department's computer policy.  (Docket Entry No. 87, Ex. 50).  He received a letter from Chief May and City Manager Singletary confirming the end of his employment.  (*Id.*).  Sims was dishonorably discharged.

After Sims was fired, the Texas Rangers investigated his allegedly unauthorized use of Covington's computer.  (Docket Entry No. 87, Ex. 10)  On August 30, 2012, a Texas grand jury

4

indicted Sims for "computer security breach," in violation of § 33.02 of the Texas Penal Code. (Docket Entry No. 87, Ex. 53).  The District Attorney later dismissed the charges.

Sims appealed his dishonorable discharge before the Texas State Office of Administrative Hearings.  (Docket Entry No. 87, Ex. 5).  An Administrative Law Judge concluded that Sims should not have been dishonorably discharged and ordered the Police Department that his employment records be changed to show an honorable discharge.  (*Id.* at p. 12).  The Department has complied.

On February 25, 2013, a Texas grand jury indicted Covington for delivery of a controlled substance and obstruction of justice, among other things.  (Docket Entry No. 87, Ex. 7 at p. 2). Covington was found guilty and sentenced to serve 30 days in jail and 5 years of probation.  (*Id.* at p. 4).

On July 14, 2014, Sims sued the City of Madisonville in Texas state court, asserting wrongful termination under the Texas Whistleblower Act, TEX. GOV'T CODE § 554.001.  (Docket Entry No. 29-1, Ex. A).  The state court dismissed Sims's claims against the City, with prejudice, for lack of jurisdiction.  (Docket Entry No. 29-4, Ex. D).  Sims appealed the dismissal order.  The appeal remains pending.  (Docket Entry No. 35 at p. 1).

On July 25, 2014, 11 days after suing the City in state court, Sims sued both the City and Covington in this court, alleging First Amendment retaliation and Fourteenth Amendment due-process deprivations.  Sims sought damages and injunctive relief, including reinstatement to his former position.  (Docket Entry No. 25 at ¶ 144).  He asserted no state-law claims.[1]

_____

[1]  To the extent Sims's summary judgment response asserts a malicious-prosecution claim and a liberty-deprivation claim against Covington, based on his involvement in Sims's prosecution for "computer security breach," those theories of liability were not raised in the first amended complaint.  They cannot be raised for the first time on summary judgment.  *Criner v. Texas–New Mexico Power Co.*, 470 F. App'x 364, 371 (5th Cir. 2012) (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).  "[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not

The City and Covington each moved for summary judgment based on the preclusive effect of the state court's dismissal.  (Docket Entry Nos. 28, 30).  The court granted the City's motion, holding that claim preclusion barred Sims's lawsuit.  The court denied Covington's motion, holding that he failed to establish privity with the City.  (Docket Entry No. 49).  Covington then moved for summary judgment on qualified immunity.  (Docket Entry No. 52).  The parties filed numerous and lengthy briefs and supporting documents.  The court held oral arguments on the motion.

## II.     The Legal Standards

### A.      Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'"  *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by

present in the complaint and raised first in a motion opposing summary judgment."  *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 & n.3 (5th Cir. 2012).

6

competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

    **B.**    **Qualified Immunity**

Covington asserts qualified immunity and argues that it precludes Sims's § 1983 damages claims for violating his federal constitutional rights.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity "is an affirmative defense; once properly raised by the defendant, the plaintiff has the burden to negate the assertion of qualified immunity." *King v. Handorf*, — F.3d —, —, 2016 WL 2621454, at *2 (5th Cir. May 6, 2016) (quotation marks omitted).

"A plaintiff can overcome a qualified immunity defense by showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam).  "When considering a defendant's entitlement to qualified immunity, [a court] must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 2084 (2011)).  "To answer that question in the affirmative, [the court] must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Id.* at 371–72 (quoting *al-Kidd*, 131 S. Ct. at 2084).  A case "'directly on point'" is not required, "'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *al-Kidd*, 131 S. Ct. at 2083).

A court has discretion to decide which of these two prongs to consider first. *Whitley v.*

8

*Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a judges function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan*, 134 S. Ct. at 1866 (citations omitted) (quotation marks omitted).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quotation marks omitted); *see also Mullenix*, 136 S. Ct. at 308.

### III.  The First Amendment Retaliation Claim

Proving First Amendment retaliation requires showing that "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015) (quotation marks omitted).

Sims concedes that Covington did not make the decision to fire him or implement that decision. (Docket Entry No. 86, Ex. 1 at p. 28–29). The parties agree that as a police sergeant, Covington lacked legal authority to make or carry out hiring or firing decisions. Sims asserts that

the Chief of Police "has the sole and final authority on all matters concerning the [police] department," including the decision to fire subordinate officers.  (*Id.* at p. 23).  The record is consistent.  When Sims was fired, he received a dismissal letter from Chief May and City Manager Singletary, not from Sergeant Covington.  (Docket Entry No. 87, Ex. 50).

Sims argues that Covington, motivated by retaliatory animus, improperly influenced Chief May's decision to fire him when he wrote Chief May a memorandum recommending Sims's termination.  (Docket Entry No. 87, Ex. 49).  The record shows, Sims claims, that Covington recommended his termination because Sims told Chief May about rumors that Covington was plotting to frame his ex-wife, and because Sims gave Ranger de la Garza a CD with evidence of Covington's plot.  Sims advances a cat's-paw theory of liability under the First Amendment.  Sims seeks damages only against Covington, the "cat's paw," not the final decisionmaker.  He cites *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), a case under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.*, for support.

The threshold and fundamental problem is recent, clear Fifth Circuit precedent that forecloses Sims's claim.  In  *Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015), the court held that, as of 2015, "[i]t was unsettled . . . whether someone who is not a final decision-maker and makes a recommendation that leads to the plaintiff being harmed can be liable for retaliation under Section 1983."  *Id.* at 627.  Because when Covington allegedly acted, "the law was not clearly established that a mere recommendation of termination to a higher authority who makes the final decision causes an adverse employment action" for purposes of First Amendment retaliation, qualified immunity precludes the relief Sims seeks.  *See id.*

Sims cannot distinguish *Culbertson*.  The plaintiff, Amanda Culbertson, like Sims, alleged

10

that she was fired for asserting her First Amendment rights. *Id.* at 614–16. Culbertson, like Sims, sought damages under § 1983 from someone who recommended that she be fired but who did not have the authority to fire her. *Id.* The Fifth Circuit held that qualified immunity barred Culbertson's First Amendment claim against the nondecisionmaker. *Id.* at 627. Sims attempts to rely on language from *Culbertson* analyzing the underlying constitutional violation, *id.* at 625–26, but he ignores the opinion's qualified-immunity holding, *id.* at 627. (Docket Entry No. 86, Ex. 1 at p. 29). Under *Culbertson*, Sims's claim must fail.

## IV.    The Procedural Due-Process Claims

### A.    A Constitutionally Protected Property Interest

No state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Sims argues that he had a property interest in his continued employment with the City that entitled him to notice and an opportunity to be heard before he was fired. The first question is whether Sims had a constitutionally cognizable, and therefore protected, property interest in his continued employment.

Sims has a federally protected property interest if he had "a legitimate claim of entitlement" to his job that was "created and . . . defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The Fifth Circuit has "recognized that a property interest is created where the public entity has acted to confer, or alternatively, has created conditions which infer, the existence of a property interest by abrogating its right to terminate an employee without cause." *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003). "This abrogation may take the form of a statute, rule, handbook, or policy which limits the condition under which the employment may be terminated; or it may take

the form of a more particularized mutual understanding with the employee." *Id.* (citations omitted). "Ultimately, however, the question of whether a property interest exists is an individualized inquiry which is guided by the specific nature and terms of the particular employment at issue, and informed by the substantive parameters of the relevant state law." *Id.*

"In Texas, there exists a presumption that employment is at-will unless that relationship has been expressly altered in one of two ways." *Id.* First, the "at-will relationship may be altered by contract." *Id.* Or, second, the at-will relationship may be altered "by express rules or policies limiting the conditions under which an employee may be terminated." *Id.* The summary judgment record does not contain an employment contract between Sims and the City, and the parties have not identified one. The question is whether the default at-will relationship was altered by express rules or policies.

Sims traces his property rights to Texas Government Code § 614.023(c). That section sets out procedures when a "complaint" is made against a police officer. TEX. GOV'T CODE § 614.021(c). It reads:

> (a) A copy of a signed complaint against a law enforcement officer of this state or a fire fighter, detention officer, county jailer, or peace officer appointed
> or employed by a political subdivision of this state shall be given to the officer or employee within a reasonable time after the complaint is filed.
>
> (b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.
>
> (c) In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:
>
> > (1) the complaint is investigated; and
> > (2) there is evidence to prove the allegation of misconduct.

*Id.* § 614.023. Sims argues that the City failed to investigate Covington's "complaint" against him

12

and failed to get "evidence to prove the allegation of misconduct." *See id.* § 614.023(c).

Again, recent binding Fifth Circuit precedent forecloses Sims's § 1983 claim. After the briefing in this case finally ended, the Fifth Circuit squarely held that § 614.023(c) does not create a federal constitutional property interest in continued employment. *Stem v. Gomez*, 813 F.3d 205, 213 (5th Cir. 2016). Like the parties here, the parties in *Stem* disputed whether § 614.023(c) "sets a for-cause threshold for dismissal of an officer . . . whenever either a citizen complaint or criticisms from inside city government may lead to disciplinary action," as Sims contends, or whether it merely "provides nothing more than a procedure for terminating an officer when the termination from employment is based on the subject matter of a complaint," as Covington contends. *Id.* at 211 (quotation marks omitted). The Fifth Circuit affirmed the district court's Rule 12(b)(6) dismissal of the plaintiff's procedural due-process claim because although § 614.023 "require[s] some action to be taken before termination of employment can occur, . . . no property right is created by that requirement." *Id.* at 213.

The Fifth Circuit held that § 614.023 "assures that an officer against whom a complaint is filed understands the allegations against him and receives a meaningful investigation into the accuracy of those allegations." *Id.* at 213. The court cautioned that "[a] city's merely conditioning an employee's removal on compliance with certain specified procedures does not necessarily mean that an employee has a substantive property right in continued employment." *Id.* (quotation marks omitted). It found persuasive legislative history showing that § 614.023 "was not aimed at abrogating the right to discharge at will." *Id.* And the court stressed that it was unclear whether that statute applied in the first place, "because the statutory meaning of a 'complaint' is unsettled." *Id.* Under *Stem*, the state law Sims relies on, § 614.023, does not create a property interest in Sims's

continued employment with the Police Department.  Absent a constitutionally protected property interest, no "process" is "due," and Sims's claim fails as a matter of law.

Even if Sims could distinguish *Stem*, which he cannot, qualified immunity independently bars the relief he seeks.  Before the Fifth Circuit decided *Stem* in 2016, the Texas courts of appeals had split over whether § 614.023 created a property interest, and there was no controlling decision on that issue from the United States Supreme Court, the Fifth Circuit, or the Texas Supreme Court. *See id.* (collecting cases).  As a result, Sims's procedural due-process rights were not clearly established when he was fired in 2012.  And even if Sims could show the violation of a clearly established constitutional right, it is unclear on what basis he could sue Covington.  The summary judgment record does not show that Covington had the authority to fire Sims.  Nor does it show that Covington was responsible for failing to implement the procedural steps § 614.023 provides.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) (pretermination notice and an opportunity to be heard provide "the only meaningful opportunity to invoke the discretion of the *decisionmaker*." (emphasis added)).  No actionable property-deprivation right is present, and this claim must be dismissed.

### B.    A Constitutionally Protected Liberty Interest in a Name-Clearing Hearing

"If the government discharges an employee amidst allegations of misconduct, the employee may have a procedural due process right to notice and an opportunity to clear his name." *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006).  "Neither damage to reputation alone nor the stigma resulting from the discharge itself trigger the protections of due process.  Rather, a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is discharged in a manner that creates a false and defamatory impression about him

14

and thus stigmatizes him and forecloses him from other employment opportunities." *Id.* (footnotes omitted) (quotation marks omitted).   The Fifth Circuit applies a seven-element "stigma-plus-infringement" test to determine whether § 1983 "affords a government employee a remedy for deprivation of liberty without notice or an opportunity to clear his name." *Id.*   The plaintiff must show that: "(1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request." *Id.*

Sims argues that after he was terminated for violating the Police Department's computer policy, Chief May stated on local television that Sims had been fired.   (*See* Docket Entry No. 87, Ex. 13 at p. 52–53).   Sims argues that this allegation was false and that he never had the opportunity—either before or after his termination—to clear his name.

Qualified immunity bars Sims's claim.   The record does not show that Sims asked Covington for a name-clearing hearing, or that Covington denied the request.   Nor does it show that Covington had the power to grant or deny a name-clearing hearing in the first place.   Sims has cited no Supreme Court or Fifth Circuit case clearly establishing that a mid-level supervisor, like Covington, violates an employee's due-process rights when the municipal department he works for fails to grant a name-clearing hearing.[2]   The case law makes clear that this type of procedural due-process claim can be maintained only against the individual or entity with the legal authority to grant or withhold the plaintiff the process allegedly due.   *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014)

---

[2]   Nor has Sims cited out-of-circuit, "robust consensus of persuasive authority." *Morgan*, 659 F.3d at 371 & n.25.

(the defendant "was in no position to provide [the plaintiff] the process he was due, a name-clearing hearing.  She [was] therefore entitled to qualified immunity."); *Harris v. City of Balch Springs*, 9 F. Supp. 3d 690, 700 (N.D. Tex. 2014) (such a claim "lies against the government employer, not an employee or official of the government." (citing *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989), *aff'd in relevant part*, 901 F.2d 61 (5th Cir. 1990) (en banc))).  No actionable liberty-deprivation right is present, and this claim must be dismissed.

## V.     Conspiracy

"[I]n order to succeed on a § 1983 conspiracy claim, a plaintiff must show: 1) an agreement between the alleged conspirators to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Navarro v. City of San Juan*, 624 F. App'x 174, 179 (5th Cir. 2015) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).  Because Sims has not shown a violation of his clearly established constitutional rights, the underlying conspiracy claim fails.

## VI.    Conclusion

Covington's motion for summary judgment is granted.  (Docket Entry No. 52).  A final judgment is separately entered.[3]

SIGNED on June 6, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[3] The court's May 26, 2016 order granted Covington leave to file a response to Sims's supplemental summary judgment response by June 3, 2016.  (Docket Entry No. 110).  The court permitted Sims to file a reply by June 10.  Although Covington filed his response on June 3, (Docket Entry No. 112), any reply Sims could file is moot in light of the binding Fifth Circuit authority foreclosing his claims.